UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| THOMAS CARR, | ) | |
| | ) | |
|   Plaintiff, | ) | Case No. 2: 14-101-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
|  Acting Commissioner of Social Security, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
|   Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Thomas Carr ("Carr" or "the Claimant") and Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 11, 16] Carr argues that the administrative law judge ("ALJ") erred in determining his residual functional capacity ("RFC") and assessing his credibility. As a result, Carr requests reversal of the ALJ's decision and remand of the case for further proceedings. [Record No. 11, p. 1] The Commissioner asserts that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief requested by Carr.

**I.**

On January 13, 2012, Carr filed concurrent applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act) and Supplemental Security Income ("SSI") under Title XVI of the Act. [Record No. 5-1,

- 1 -

Administrative Transcript, "Tr.," p. 183–92] He alleged a disability beginning November 23, 2011. Carr's applications were denied initially and upon reconsideration by the Social Security Administration ("SSA"). [Tr., pp. 103–18, 121–27] Carr, along with attorney Greg Hughes and vocational expert Teresa Trent, appeared before ALJ Gregory G. Kenyon on June 12, 2013, for an administrative hearing. [Tr., p. 32] On August 30, 2013, ALJ Kenyon found that Carr was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act. [Tr., pp. 16–31] Carr filed a request for appeal with the SSA's Appeals Council on October 22, 2013. That request was denied on March 28, 2014. [Tr., pp. 1–7]

Carr was 43 years old when his alleged disability began on November 23, 2011, and 45 years old at the time of the ALJ's decision. [Tr., p. 183] He completed two years of college and previously worked as a pharmaceutical sales representative, supervisor, telephone solicitor, sales clerk, security guard, and door to door salesman. [Tr., pp. 24, 211] From November 2012 through July 2013, Carr was employed part-time by a freight carrier service clearing airway bills for the tariff department, working 30 hours per week. He alleges that he lost this job because he was unable to work 40 hours per week. [Tr., p. 205] Carr contends that he is unable to work full-time due to diabetes mellits with associated neuropathy, the residual effects of a below-knee amputation of the right leg, residuals of the amputation of the first and second toes of the left foot, degenerative disc disease of the lumbosacral spine, carotid artery disease, and peripheral vascular disease. [Tr., pp. 21–22; Record No. 11, pp. 2–4]

In March 2012, Dr. Sannagai Brown, a state agency physician, reviewed Carr's medical records. Dr. Brown concluded that, within 12 months of the alleged onset date

(November 23, 2011), Carr would be able to perform light work. [Tr., pp. 74–)76] State agency physician Dr. Douglas Black affirmed this assessment in June 2012. [Tr., pp. 87–89] Another state agency physician, Dr. Arvind Chopra, reviewed Carr's records on August 10, 2012, finding that he would only be able to perform sedentary work. [Tr., p. 524] All three state agency physicians agreed that Carr would be able to work eight hours a day, five days a week. Further, Carr began seeing Dr. Bradford Quatkemeyer in April 2012 and continued to see him for regular check-ups and medication refills. Notably, at the Claimant's January 29, 2013 visit, Dr. Quatkemeyer stated that, regarding his chronic pain, Carr's functional limitations included inability to complete manual labor and some activities of daily living. [Tr., p. 538] Thereafter, at an April 26, 2013 appointment, Dr. Quatkemeyer found that Carr had no functional limitations. [Tr., p. 528]

After reviewing the record and considering the testimony presented during the administrative hearing, the ALJ determined that Carr suffers from diabetes mellitus with associated neuropathy, the residual effects of a below-knee amputation of the right leg, residuals of the amputation of the first and second toes of the left foot, degenerative disc disease of the lumbosacral spine, carotid artery disease, and peripheral vascular disease. [Tr., p. 22] Notwithstanding these impairments, the ALJ concluded that Carr maintained the RFC to perform sedentary work, subject to the following limitations:

> [Carr] can do only occasional crouching, crawling, stooping, kneeling, balancing, and climbing of ramps and stairs. He cannot climb ladders, ropes, and scaffolds and cannot work around hazards such as unprotected heights or dangerous machinery. The claimant cannot drive automotive equipment and cannot use his lower extremities for pushing, pulling, or operating foot controls. He cannot work on rough or uneven surfaces and cannot tolerate concentrated exposure to temperature extremes or vibrations. The claimant is

> able to tolerate standing and walking for no more than five minutes at a time
> and is limited to performing unskilled, simple, repetitive tasks.

[Tr., p. 24]

The ALJ found that Carr was unable to perform past relevant work. [Tr., pp. 24–25] However, after considering his age, education, work experience, RFC, and the testimony of vocational expert Trent, the ALJ determined that there were jobs existing in significant numbers that Carr could perform, including lens inserter, table worker, and etcher helper. [Tr. p. 25] Thus, the ALJ concluded that Carr was not disabled from November 23, 2011 through August 30, 2013, the date of the administrative decision. [Tr., p. 26]

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity,' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that he suffers from a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the claimant is not engaged in

substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether he can perform his past work. If he can, he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial-evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial

evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). In other words, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III.

#### A. The RFC Determination

Carr first argues that the ALJ failed to properly evaluate his RFC. [Record No. 11, p. 5] Specifically, he asserts that the ALJ erred in holding that he is able to work eight hours, five days a week. Further, Carr contends that it was improper for the ALJ not to include an option to alternate sitting and standing. [*Id.*, p. 6]

RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. The RFC determination is a matter reserved for the ALJ. *See* 20 C.F.R. § 404.1546(c), 416.946(c). In making this determination, the ALJ considers the medical evidence, non-medical evidence, and the claimant's credibility. *Coldiron v. Comm'r of Soc.*

*Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010). An ALJ's RFC finding will be upheld where it is supported by substantial evidence.

Here, the ALJ considered the opinions of state agency physicians, including Dr. Sannagai Brown, Dr. Douglas Black, and Dr. Arvind Chopra. Both Dr. Brown and Dr. Black concluded that Carr's condition would allow him to perform the exertional requirements of light work. However, Dr. Chopra determined that Carr's physical condition would limit him to sedentary work. [Tr., p. 24] All three state agency physicians determined that Carr would be able to work eight hours a day, five days a week. Further, Carr's treating physician Dr. Quatkemeyer recorded constant improvement in his condition, culminating in the determination on April 26, 2013, that Carr had no functional limitations. [Tr., p. 528] After considering the medical evidence, the ALJ determined that Dr. Chopra's determination that Carr was limited to sedentary work "reasonably reflect[ed] the claimant's exertional difficulties." [Tr., p. 24]

The ALJ also considered Carr's testimony when determining his RFC. Carr testified at the June 12, 2013 hearing, that he was unable to work more than six hours in a day and that he needed to alternate sitting and standing. [Tr., pp. 39–40] Additionally, in July 2013 (following the hearing but prior to the ALJ's decision), Carr lost his part-time job clearing airway bills for the tariff department. He alleges that that this was the direct result of his inability to work 40 hours per week [Tr., p. 205], but provided no further evidence.[1] "An

---

[1] During the June 12, 2013 hearing, Carr stated that it was possible that he would lose his part-time job because of his inability to work 40 hours a week. [Tr., p. 53–54] However, Carr also stated that his employer informed him prior to starting the job that it "was just a temporary seasonal job" and that they were planning on getting rid of the program in which he was enrolled. [Tr., pp. 39, 53–54]

individual's statements as to 'pain or other symptoms will not alone establish that [he is] disabled." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Here, the ALJ did not find Carr's statements that his physical condition limited him to six hours of work per day to be credible. [Tr., pp. 23–24] And Carr failed to provide any evidence other than his own testimony to contradict the ALJ's assessment. The ALJ properly considered Carr's part-time job clearing airway bills for the tariff department and his medical conditions in determining that his allegations were inconsistent with the evidence contained in the record. [Tr., p. 23–24]

Finally, Carr contends that the ALJ erred because "[t]he [vocational expert]'s testimony did not address the issue of how many jobs would remain if a person needed to alternate sitting and standing." [Record No. 11, p. 7] However, the vocational expert's testimony relies on the ALJ's assessment of what the claimant "can and cannot do." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). ALJ Kenyon's questioning properly relied on his well-supported assessment of Carr's functional limitations. The only evidence in the record regarding Carr's need to alternate sitting and standing comes from his own testimony. [Tr., pp. 39–40, 50, 53] Because these statements are unsupported by the record, the ALJ did not err in failing to include this alleged limitation when questioning vocational expert Trent.

### B. The Credibility Assessment

Carr alleges that ALJ Kenyon erred regarding the weight given to his credibility. Specifically, he asserts that the ALJ used vague language when discussing his credibility, making it impossible to determine if his decision is supported by the evidence. Further, he

argues that the ALJ's credibility assessment is contradictory. [Record No. 11, pp. 7–9] The ALJ is required to evaluate the credibility of a claimant's statements concerning his symptoms by comparing them to other evidence in the record. 20 C.F.R. § 404.1529(a), (c), 416.929(a), (c). Further, an ALJ's assessment of credibility is entitled to deference because the ALJ is in a unique position to "observe the claimant and judge [his] subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Walters*, 127 F.3d at 531. However, if the ALJ "rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). Such a determination must be supported by the record. *Rogers*, 486 F.3d at 247–48.

In addition, the Sixth Circuit has developed the following test to evaluate a claimant's subjective allegations:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531.

In determining credibility, the ALJ considered Carr's testimony and opinion evidence. The ALJ also considered the Claimant's symptoms and the extent they could be reasonably accepted as consistent with the objective medical evidence. [Tr., p. 23]; 20 C.F.R. § 404.1529(c)(2), 416.929(c)(2). For example, the ALJ noted that as a symptom of Carr's right leg amputation, he complained of phantom leg pain. Regarding the existence of pain, Carr's testimony was found to be credible. However, the ALJ stated that Carr had received a right leg prosthesis and that he had adapted well to using it with no evidence of stump

complications or additional leg infections. Further, the ALJ noted that "neither his 'real' pain nor phantom pain is of such intensity that he has been unable to perform sedentary level work." [Tr., pp. 23–24] The ALJ also discussed that Carr had a history of carotid artery disease, but that a carotid duplex study performed in November 2011 was negative, and there was no evidence of recurrent carotid artery lesions or cardiac disease. [Tr., pp. 23, 416] Objective medical evidence of this type is appropriate when determining a claimant's credibility. *Oliver v. Comm'r of Soc. Sec.*, 415 F. App'x 681, 686 (6th Cir. 2011).

Statements from medical sources were also properly considered. 20 C.R.F. § 404.1529(c)(3), 416.929(c)(3). As discussed above, Dr. Chopra concluded that Carr would be able to perform sedentary work for up to eight hours a day, within 12 months of the alleged onset date. [Tr., p. 524] Further, Dr. Quatkemeyer found that Carr had no functional limitations. [Tr., p. 528]

Additionally, the ALJ appropriately considered Carr's work history following his right leg amputation. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (finding that an ALJ may conclude that subjective complaints were not credible based upon the ability to perform other tasks). Beginning in November 2012 and through the administrate hearing on June 12, 2013, Carr was employed part-time with a freight carrier service clearing airway bills for the tariff department (sedentary work), working 30 hours per week. At the hearing, Carr stated that sharp pains in his back and through his legs make it impossible for him to work more than six hours in a day. [Tr., p. 39, 51] However, based upon the medical determinations that Carr is able to work eight hours a day and his proven

ability to work at least 30 hours a week, the ALJ concluded that Carr's testimony regarding the intensity and limiting effect of his symptoms was not credible. [Tr., pp. 23–24]

Carr argues that the ALJ's credibility determination was too vague to allow a reviewing agency to find that the decision was supported by the evidence. [Record No. 11, p. 8] However, as described above, the ALJ's ruling specifically identified Carr's testimony at the hearing, objective medical evidence, statements from medical sources, and his work history since November 2011 when making the credibility assessment. Thus, the ALJ's credibility determination was not too vague.

Carr also argues that the ALJ's credibility assessment was contradictory. [Record No. 11, pp. 8–9] In addressing the issue of credibility, the ALJ stated:

> [Carr] appeared to be a sincere and forthright individual at the hearing, but it is noteworthy that he has been doing sedentary work on a 30 hour per week basis since November 2012. After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

[Tr., p. 23] Carr asserts that the ALJ's statement that he "appeared to be a sincere and forthright individual at the hearing" contradicts the conclusion that he was "not entirely credible." [Record No. 11, p. 8] Although the ALJ gave weight to Carr's testimony regarding the types of symptoms he was experiencing, the medical evidence and his employment since November 2012 brought his statements regarding the severity and intensity of the pain into doubt. The ALJ's statement that Carr "appeared to be a sincere and forthright individual" does not negate this reasoning.

Finally, Carr contends that it was contradictory for the ALJ to find that his part-time work did not constitute gainful employment, while using it as the basis for his credibility determination. However, the ALJ did not only consider Carr's part-time employment when assessing his credibility. The ALJ also considered his testimony, objective medical evidence, and the conclusions of Carr's medical examiners supporting the determination that he should be able to work for eight hours a day, five days a week. Further, the Claimant provided no countervailing evidence other than his own statements. Because of the deference afforded to the ALJ in evaluating a claimant's credibility and subjective complaints of pain, as well as the facts clearly stated in the ALJ's ruling, the Court finds no error with the ALJ's credibility determination.

## IV.

Substantial evidence supports ALJ Kenyon's determination of Carr's RFC. Further, the ALJ did not err in his assessment of Carr's credibility. Accordingly, it is hereby

**ORDERED** as follows:

(1) Plaintiff Thomas Carr's motion for summary judgment [Record No. 11] is **DENIED**.

(2) Defendant Carolyn W. Colvin's motion for summary judgment [Record No. 16] is **GRANTED**.

(3) The administrative decision will be **AFFIRMED** by separate judgment entered this date.

This 16th day of December, 2014.


Signed By:
*Danny C. Reeves* DCR
United States District Judge